UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS BABB,

      Petitioner,

v.                                                CASE NO. 2:09-CV-11804
                                                HONORABLE AVERN COHN

GREG MCQUIGGAN,

      Respondent.
_____/

**MEMORANDUM AND ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY**

**I. Introduction**

This is a habeas case under 28 U.S.C. § 2254. Michigan prisoner Thomas Babb ("Petitioner"), pleaded no contest to second-degree murder, Mich. Comp. Laws § 750.317, aggravated stalking, Mich. Comp. Laws § 750.411i, assault with a dangerous weapon, Mich. Comp. Laws § 750.82, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, in the Isabella County Circuit Court. He was sentenced as a second habitual offender, Mich. Comp. L. § 769.10, to 50 to 75 years imprisonment on the murder conviction, a concurrent term of five to seven years imprisonment on the stalking conviction, a concurrent term of four to six years imprisonment on the assault conviction, and a consecutive term of two years imprisonment on the felony firearm conviction in 2007.

Petitioner raises claims concerning the effectiveness of trial counsel and the voluntariness of his plea. For the reasons that follow, the petition will be denied. The Court will also decline to issue a certificate of appealability.

## II. Facts and Procedural History

Petitioner's convictions arise from the shooting death of his wife, Mary Babb, in her rolled-over car outside the Morning Sun building in Mount Pleasant, Michigan on January 9, 2007. The preliminary examination testimony and police reports revealed that Petitioner confessed to several people that he shot his wife, witnesses observed him at the scene of the shooting, his vehicle matched the one at the scene, a shotgun shell recovered from the scene matched a shotgun found in his possession, and several people heard him threaten to kill his wife prior to the shooting. The evidence of his guilt was overwhelming.

On October 4, 2007, Petitioner pleaded no contest to the aforementioned offenses in exchange for the dismissal of other charges, including first-degree murder, a sentencing guideline and term of years agreement, and a plea agreement concerning an unrelated Otsego County case. The parties executed a written agreement outlining the specific terms of the plea bargain. *See* Plea Agreement & Plea Hrg. Tr. At the plea hearing, Petitioner confirmed that he was 37 years old, that he could read and write, and that he was not impaired. He indicated that he had consulted with counsel, that he understood the terms of the plea agreement and its consequences, and that he was aware of the rights he was giving up by pleading no contest. He stated that he wanted to plead no contest and denied being threatened or coerced into tendering his plea. He also executed a written plea agreement.

On October 29, 2007, the trial court sentenced Petitioner, in accordance with his plea agreement and the state sentencing guidelines, to the aforementioned terms of imprisonment. *See* Sent. Hrg. Tr.

Petitioner subsequently moved to withdraw his plea. The trial court conducted a

hearing on the motion on May 30, 2008.  At that hearing, Petitioner's counsel testified that he met with Petitioner about the case on 10 different occasions and they also exchanged written correspondence.  Counsel indicated that he initially intended to pursue an insanity defense and Petitioner was given a psychiatric evaluation.  When counsel first met with Petitioner after the crime, Petitioner told him that the police arrested him at home and beat him and that his wife had gotten shot.  After the arraignment, Petitioner told him that his wife was working with an undercover drug unit and that Mexican drug dealers had killed her.  Counsel did not believe Petitioner's story and talked to him about the witnesses and evidence against him.  After the psychological evaluation indicated that Petitioner was competent, counsel continued to discuss an insanity defense with Petitioner, but also decided to pursue a plea deal.  Counsel told Petitioner that it would be difficult to beat either a first-degree premeditated or felony murder charge given the evidence against him.  Counsel also talked to Petitioner about the effect of a trial on his family and friends.

On cross-examination, counsel testified that he had known Petitioner for several years, that he had previously represented him and negotiated a favorable plea bargain on a domestic violence charge, and that he was representing Petitioner in a pending case at the time of the shooting.  Counsel also represented two of Petitioner's family members in unrelated cases.  Counsel testified that he did not pursue the Mexican drug dealer defense because it was ridiculous.  He also came to realize that an insanity defense would be problematic after reviewing recordings of Petitioner's telephone calls from jail to his friends discussing trial strategies.

Petitioner testified that he met with counsel only four times to discuss the case.  He said that he told counsel that he was innocent, that his wife's murder was due to drug dealings, and that he had a tape to prove it.  Petitioner recalled counsel discussing an

3

insanity defense, but Petitioner responded that he was not insane. Petitioner remembered telling a psychiatrist that Mexican drug dealers killed his wife when he was examined about six months before his plea. Petitioner claimed that he entered his plea because counsel changed his defense to temporary insanity, said that his case was bad, and told him that he would spend the rest of his life in prison. Petitioner said that he wanted to withdraw his plea because he is innocent.

On cross-examination, Petitioner testified that he pled no contest because he was frightened of trial and did not think he had good representation. Petitioner further testified that Mexican drug dealers wanted to speak with his wife and were behind her killing. He explained that, on the day of the shooting, he showed two Caucasians from a motorcycle club where his wife worked to avoid telling them where she and his son lived. Petitioner said that he drank and took Valium that day, that the men initially followed him in their own car, but then he pulled over, and they got into his truck. Petitioner rode as a passenger, passed out, and then heard the men say that his wife's car had rolled over. After they drove way, the men returned to their car and Petitioner heard them talking about shooting into his wife's car. Petitioner left in his truck. Upon further questioning, Petitioner admitted making incriminating statements to two friends following the shooting, but said that he was hysterical and worried about his family.

Petitioner's mother, Judy Cobb, testified briefly at the hearing. She said that Petitioner wanted to retain defense counsel and they discussed payment options. Petitioner later told her that he was unhappy with counsel. Detective David Tuma testified about his investigation of the shooting. He said that witnesses identified Petitioner as the perpetrator and he could not substantiate Petitioner's claims about Mexican drug dealers.

Following the hearing, the trial court denied the motion. The court essentially

found trial counsel's testimony to be credible and Petitioner's testimony not to be credible. *See* Motion Hrg. Tr.; *People v. Babb*, No. 07-39-FC (Isabella Co. Cir. Ct. June 12, 2008).

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals asserting that he should be allowed to withdraw his plea because trial counsel frightened him into pleading no contest and failed to investigate his claim that another person murdered his wife because she was a drug informant. The court denied the application for lack of merit in the grounds presented. *People v. Babb*, No. 286303 (Mich. Ct. App. Aug. 8, 2008) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Babb*, 483 Mich. 893, 760 N.W.2d 467 (2009).

Petitioner thereafter filed the present habeas petition raising the same claims presented to the state courts on direct appeal of his convictions. Respondent has filed an answer to the petition contending that it should be denied for lack of merit.

### III. Analysis

#### A. Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

5

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or

theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### B. Pre-Plea Claims

Petitioner asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate his claim that drug dealers were responsible for his wife's murder. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea, however, are foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267. Simply stated, a defendant who pleads guilty or no contest generally waives any non-jurisdictional claims that arose before his plea. In such a case,

7

the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *See Broce*, 488 U.S. at 569. Petitioner pleaded no contest to second-degree murder, aggravated stalking, assault with a dangerous weapon, and felony firearm. Absent a showing that his plea was not knowing, intelligent, or voluntary, his claims concerning counsel's investigation during the pre-plea period are foreclosed by his plea.

### C.  Voluntariness of the Plea

Petitioner essentially asserts that his no contest plea was involuntary because trial counsel frightened him into taking the plea bargain. When a petitioner is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. *See Broce, supra*. A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748.

Here, the state court record reveals that Petitioner's plea was knowing, intelligent, and voluntary. At the time of his plea, Petitioner was 37 years old and had prior experience with the criminal justice system. There is no evidence that he suffered from a medical condition that impaired his ability to understand his criminal proceedings or the nature of his plea. Petitioner responded appropriately to the trial court's questions and stipulated to a factual basis for his plea indicating his guilt of the offenses. Petitioner was

represented by legal counsel and conferred with counsel during the plea process. The trial court advised Petitioner of his trial rights and the fact that he would be giving up those rights by pleading guilty. The court discussed the plea and sentencing consequences, and informed Petitioner of the maximum sentences he faced upon conviction. Petitioner indicated that he was pleading no contest of his own free will and that he had not been coerced or threatened. He indicated that no promises had been made, other than those contained in the agreement, to induce his plea. Petitioner also signed a written plea agreement.

Petitioner claims that defense counsel frightened and coerced him to accept a plea. Petitioner has not established that counsel misadvised him about his case or his plea. Moreover, even if Petitioner was somehow misinformed by counsel, he is not entitled to habeas relief. A trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. *See Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999); *see also Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004). The record demonstrates that the trial court conducted a proper colloquy. Additionally, Petitioner's assertion that defense counsel pressured him into pleading no contest conflicts with his sworn testimony at the plea hearing in which he denied being coerced and stated that he was entering a plea of his own free will. There is no credible evidence that defense counsel or anyone else strong-armed Petitioner or used coercive tactics to get him to tender a plea. Petitioner's assertion that he was coerced is belied by the record. The Court is satisfied that Petitioner's plea was knowing, intelligent, and voluntary.

### D. Effectiveness of Defense Counsel

Petitioner relatedly asserts that he is entitled to habeas relief because defense

counsel was ineffective, thereby rendering his plea involuntary. The United States Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who is challenging a plea on the ground that he was denied his Sixth Amendment right to the effective assistance of counsel. First, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). To demonstrate that counsel's performance fell below this standard, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Second, if the petitioner satisfies the first prong of this test, the petitioner must then demonstrate that counsel's performance resulted in prejudice, *i.e.*, "that there is a reasonable probability that, but for counsel's errors, [he/she] would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The Supreme Court has explained that "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." *Id.* The Supreme Court has also emphasized that "these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncracies of the particular decisionmaker.'" *Id.* at 59-60 (quoting *Strickland*, 466 U.S. at 695).

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly'

so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. Additionally, the Supreme Court has emphasized the extraordinary deference to be afforded trial counsel in the area of plea bargaining. *See Premo v. Moore*, 562 U.S. _, 131 S. Ct. 733, 741 (2011) (stating that "strict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage"); *see also Bray v. Andrews*, _ F.3d _, 2011 WL 1544740, *5 (6th Cir. 2011) (citing *Premo*).

Petitioner asserts that defense counsel was ineffective for failing to investigate his case during the pre-plea period. As discussed *supra*, claims about the deprivation of constitutional rights that occur before the entry of a guilty or no contest plea are foreclosed by that plea. *See Broce*, 488 U.S. at 569; *Tollett*, 411 U.S. at 267. In such a case, the inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *See Broce*, 488 U.S. at 569. Accordingly, Petitioner's claim that defense counsel was ineffective for failing to investigate his case or take other actions during the pre-trial period is foreclosed by his no contest plea and Petitioner is not entitled to relief on such a basis.

To the extent that Petitioner asserts that defense counsel was ineffective for advising him to plead no contest rather than preparing for and proceeding to trial, he is also not entitled to relief. It is true that defense counsel has a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Strickland*, 466 U.S. at 690-91; *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006); *O'Hara v. Wiggington*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be

11

supported by a reasoned and deliberate determination that investigation was not warranted). Petitioner, however, has not established that counsel was deficient in investigating his case and in advising him to accept a plea. The record reveals that witnesses saw Petitioner shoot his wife, that Petitioner admitted that he did so to several people after the incident, that physical evidence linked Petitioner to the shooting, and that he had no real defense to the charges. Based upon the preliminary examination and the police reports, defense counsel reasonably determined that investigation into Petitioner's drug dealer claims was unnecessary, that Petitioner could not prevail at trial, and that his interests would best be served by pleading no contest to lesser and fewer charges with a hope for leniency at sentencing. Petitioner has failed to show that counsel erred or acted unreasonably in advising him to plead no contest under the circumstances of this case.

Further, Petitioner has not established that but for counsel's alleged errors there is a reasonable probability that he would not have pleaded no contest and would have insisted on going to trial. *See Hill*, 474 U.S. at 58-59. Petitioner did not have a good defense to the charges and he faced life imprisonment without the possibility of parole if convicted on the first-degree murder charge. The matters which he believes should have been further investigated by counsel are speculative, are unsupported by anything other than his own conclusory assertions, and do not cast doubt upon the reliability of the proceedings. Consequently, Petitioner cannot prevail on his ineffective assistance of counsel claims. Habeas relief is not warranted.

## IV. Conclusion

For the reasons stated above, the state courts' denial of relief on Petitioner's claims is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner is not entitled to habeas relief on the claims contained

in his petition. Accordingly, the petition is DENIED.

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37.

Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court DECLINES to issue a certificate of appealability.

SO ORDERED.

Dated: June 28, 2011                    S/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to Thomas Babb, 665335, Chippewa Correctional Facility, 4269 W. M-80, Kincheloe, MI 49784 and the attorneys of record on this date, June 28, 2011, by electronic and/or ordinary mail.

                                        S/Julie Owens
                                        Case Manager, (313) 234-5160